Commonwealth *v.* Nole, Appellant.

Argued November 11, 1971.   Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Reuben Singer,* with him *William J. Campbell,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, June 28, 1972:

On May 21, 1970, the appellant, John Frederick Nole, was convicted by a jury of first degree murder. Subsequently he received a sentence of life imprisonment. Post-trial motions were denied and this appeal followed. We affirm.

The charges against appellant arose out of the death in Philadelphia on February 22, 1969 of Joseph Shayka, an 81-year-old storekeeper. Shortly after his apprehension on September 2, 1969, appellant gave homicide detectives a complete, signed confession, detailing his participation in the events leading up to Shayka's death. A pretrial motion to suppress this confession was denied, and that ruling is not now challenged. By his own admission, corroborated by the victim's widow, who was an eyewitness to the happenings, the following transpired. At approximately 5:00 P.M. of the day Shayka died, appellant, then aged 17, and two other

juveniles entered the deceased's grocery and candy store. Appellant carried a loaded revolver and one of his companions was armed with a knife. When his demands for cash were met with hesitation, appellant jabbed the old storekeeper four times in the stomach, twice with his hands and a like number with the revolver barrel. The three youths then seized some loose change and cigarettes and fled as Shayka slumped to the floor. He was pronounced dead on arrival at a hospital at 5:25 P.M.

## I.

It is well established that in a homicide case the Commonwealth must prove beyond a reasonable doubt that (1) a death has occurred; (2) the death resulted from a criminal agency; and (3) the defendant is legally responsible for the death. *Commonwealth v. Thomas,* 429 Pa. 227, 232, 239 A. 2d 354 (1968) ; *Commonwealth v. Chester,* 410 Pa. 45, 50, 188 A. 2d 323 (1963) ; *Commonwealth v. Gardner,* 282 Pa. 458, 462-3, 128 Atl. 87 (1925). Appellant contends that the Commonwealth failed to show beyond a reasonable doubt that his criminal act of striking the deceased in the stomach, either with his hands or with the gun barrel, was the cause of death.

The Commonwealth called Dr. Marvin Aronson, Assistant Medical Examiner (now Medical Examiner) for the City of Philadelphia.[1] He testified that Joseph Shayka had died from a ruptured arteriosclerotic

---

[1] The autopsy on the body of the deceased was performed on February 23, 1969 by Dr. Joseph E. Campbell, then Deputy Medical Examiner of Philadelphia. Although Dr. Campbell had died before this case came to trial, the results of his postmortem examination, consisting of slides, photographs, and protocol (the technical term for an autopsy report) were available to his colleague, Dr. Aronson.

aneurysm of the abdominal aorta; that this rupture was recent, i.e., within eight to ten hours of death; and that it had led to a blood loss of approximately one quart. In laymen's terms, Dr. Aronson positioned the fatal internal injury at the level of the navel and gave as his expert opinion that death resulted from a poke or punch in the stomach inflicted with a pistol or fist. The witness admitted that a sudden rise in blood pressure, a fall on the area of the aneurysm, or even a bending over were *possible* causes of the fatal injury. When pressed on cross-examination, however, Dr. Aronson gave the following response: "Anything is possible. However, the close time relationship between the collapse of this individual and the events described prior to that collapse, make it obvious that there is a relationship between these two factors . . . . [A]s I understand your question, sir, you are asking me if by coincidence at the same time that the deceased in this case suffered some injury that he could have by coincidence ruptured his aorta at that time, my answer is, yes, anything is possible *but I consider that possibility in the realm of speculation or absurdity.*" (Emphasis added.)

The law imposes upon the Commonwealth the burden of proving the defendant guilty beyond a reasonable doubt, not beyond all doubt. As we said in *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A. 2d 95 (1943) : "Nor may we say, as a matter of law, that the guilt of the accused has not been sufficiently established to carry the case to the jury merely because of a *remote possibility* that the evidence, or some part of it, might be true and the accused still be innocent." (Emphasis added.) See also *Commonwealth v. Holt*, 350 Pa. 375, 39 A. 2d 372 (1944). It is manifest from the testimony of Dr. Aronson that he placed the chance of the victim's having died from a cause other than the blows

inflicted by appellant as no greater than such a "remote possibility". This case is clearly distinguishable from *Commonwealth v. Embry,* 441 Pa. 183, 272 A. 2d 178 (1971) and *Commonwealth v. Radford,* 428 Pa. 279, 236 A. 2d 802 (1968), cited by appellant. In both those cases, as here, the Commonwealth produced only one expert witness to prove the element of causation. In *Embry,* the opinion was with a "reasonable degree of medical certainty" only, and in *Redford* the testimony indicated that the defendant's assault on the deceased "probably" caused the death. These two standards unquestionably fall short of Dr. Aronson's positive assertion qualified only by a "possibility in the realm of speculation or absurdity". We therefore reject appellant's first contention.

## II.

On September 11, 1969, nine days after his arrest, appellant was brought before a judge of the Juvenile Branch of the Family Court Division of the Court of Common Pleas of Philadelphia. Counsel was appointed at that time[2] from the Office of the Public Defender and following a hearing appellant was bound over as an adult to the District Attorney for action by the grand jury on a general charge of murder.

Appellant would have us invalidate this preliminary proceeding on either of two grounds: (1) that his counsel's cross-examination of the Commonwealth's wit-

---

[2] Although the hearing in this case preceded *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387 (1970) (recently held not to be retroactive by *Adams v. Illinois,* 405 U.S. 278, 31 L. Ed. 2d 202 (1972)), counsel for any defendant charged with a capital offense was required by the Pennsylvania Rules of Criminal Procedure to be present at preliminary hearings. See Rule 119(d) of the Pa. Rules of Crim. Proc., effective January 1, 1965. (As of May 1, 1970 Rule 119(d) was superseded without change by Rule 120(d).)

nesses was ineffective; or (2) that he was denied due process of law because his parents were not formally notified of the charges in advance of the hearing. As to the first of these contentions, suffice it to say that we have examined the hearing transcript in its entirety and find counsel's performance to have been fully adequate to protect his client's interests.

As to point two, a detention hearing, attended by appellant's mother, was held in the Juvenile Court on September 3, 1969. At the conclusion of that hearing, the judge set September 11 for the certification hearing. We conclude that these events constituted more than sufficient notice to appellant's parents under any test and therefore need not decide whether such notice is constitutionally mandated by the Supreme Court's decision in *Re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527 (1967), which pertained to a delinquency hearing as opposed to the present one for certification on a murder charge. Cf. *Coleman v. Alabama*, 399 U.S. 1, 26 L. Ed. 2d 387 (1970); *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84 (1966); *Commonwealth v. James*, 440 Pa. 205, 269 A. 2d 898 (1970); *Gaskins Case*, 430 Pa. 298, 244 A. 2d 662 (1968).

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.