383 A.2d 503

COMMONWEALTH of Pennsylvania

v.

Daniel WILLIAMS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 12, 1976.

Decided Jan. 26, 1978.

Thomas W. Houser, Bethlehem, for appellant.

John E. Gallagher, 1st Asst. Dist. Atty., Salvador Salazar, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Tina Anderson, age eight, was found dead at 1:15 P.M. on December 12, 1973, in a stream behind the Western Electric Plant in Allentown, Pennsylvania. As a result of the investigation which followed, appellant was arrested, tried by a jury, and convicted of murder in the first degree, rape, kidnapping, and deviate sexual intercourse. After the dismissal of post-trial motions by the lower court, *en banc*, the instant direct appeal followed.[1]

The first issue we consider is appellant's challenge to the sufficiency of the evidence supporting the verdict. In reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Rankin*, 441 Pa. 401, 272 A.2d 886 (1972). The test of the sufficiency of the evidence was articulated in *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973), wherein this Court stated:

". . . the test to be applied in determining the sufficiency of the evidence is whether accepting as true all of the evidence, be it direct or circumstantial or both, and all reasonable inferences arising therefrom, upon which, if believed, the jury could properly have based its verdict, it

1. We have before us only the appeal from the judgment of sentence imposed under the murder indictment. Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202 (Supp.1977–78).

is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime of which he has been convicted." *Id.* at 361, 301 A.2d at 648, *quoting, Commonwealth v. Williams,* 443 Pa. 85, 87, 277 A.2d 781, 783 (1971).

At about 5:45 P.M. on December 11, 1973, appellant arrived at the home of the victim, Tina Anderson, age eight, located at 1110 Merriman Court, Bethlehem, Pennsylvania. After appellant had socialized with the Anderson family for about fifteen minutes, Tina left the home to visit a neighbor. Seconds later, appellant also departed from the Anderson home. It was subsequently learned that Tina never reached the neighbor's home. However, at 6:20 P.M., a Bethlehem motorcycle patrolman stopped appellant's vehicle on Stefko Boulevard in Bethlehem for a traffic light violation. The officer observed a passenger in appellant's vehicle and recorded the number "two" in the "occupant" square on the citation. He later described the passenger as about an eight year old female wearing clothing which matched that worn by Tina Anderson when she left her home.

At 8:30 P.M., appellant returned to the Anderson home with his wife. He introduced his wife to Thelma Anderson, Tina's mother, and told Mrs. Anderson that he could not take her to the movies that evening as had been arranged during the appellant's earlier visit. During this conversation he made no mention of having Tina with him in his car earlier that evening. At about 9:30 P.M. that same evening, Mrs. Anderson reported Tina missing. Despite an intensive police search, she was not located that night. The next day, December 12, 1973, Tina was found dead at 1:15 P.M. in a stream behind the Western Electric Plant in Allentown, Pennsylvania, by an employee of the City of Allentown. Her body was partially submerged in the shallow stream and a large rock had been placed on her chest in an apparent attempt to prevent the body from floating to the surface.

A criminologist stated that a hair found in appellant's car appeared to come from the same source as a hair found on Tina's thigh. He also testified that certain fibers found in

the trunk of appellant's car matched the fibers in the clothing Tina was wearing at the time of her disappearance. A pathologist testified that there had been penile entry in the mouth, vagina, and rectum of Tina. He further testified that there were lacerations in both the anus and vagina as well as injuries to the mouth. Based on these findings he concluded that Tina's death was caused by asphyxiation. It was his judgment that asphyxiation was caused by either penile choking; suffocation resulting from another person's pubic or lower abdominal regions covering Tina's face; or suffocation resulting from another person's body on Tina's chest. Additionally, he testified that he could not conclusively rule out the possibility of drowning, but that he believed that possibility to be highly unlikely since seminal fluid was found in the mouth and in the event of drowning the fluid would most likely have been washed away. Another Commonwealth witness was Charles LaFever, appellant's cellmate at Northampton County Prison. LaFever testified that on or about March 10, 1974, apparently during an altercation, appellant said to LaFever: "I killed one. I can kill another." [2]

The attack upon the sufficiency of the evidence by appellant is essentially two-pronged. First, appellant, noting that the Commonwealth had proceeded under a felony-murder theory,[3] contends that the evidence presented was insuffi-

---

**2.** It is true, as appellant notes in his brief, that the Commonwealth's case was based primarily upon circumstantial evidence. We note in passing that there is nothing inherently suspect about *relevant* circumstantial evidence. Our case law has firmly established that the guilt of one accused of a crime may be established beyond a reasonable doubt by circumstantial evidence alone. *Commonwealth v. Dawson,* 464 Pa. 254, 346 A.2d 545 (1975); *Commonwealth v. Cox,* 460 Pa. 566, 333 A.2d 917 (1975); *Commonwealth v. Figueroa,* 456 Pa. 381, 321 A.2d 658 (1974).

**3.** The criminal transaction in the instant case occurred before the 1974 amendment to the Crimes Code making felony murder a murder of the second degree. Act of March 26, 1974, P.L. 213, No. 46, § 4, 18 Pa.C.S.A. § 2502 (Supp.1977–78). Thus, appellant was properly tried under the 1972 version of the murder statute which provided:

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by means of

cient to establish any of the requisite underlying felonies. Secondly, it is argued that the evidence fails to establish that death resulted from a criminal agency. We do not agree with either position.

Appellant correctly observed that although deviate sexual intercourse may be committed without "forcible compulsion" or threat thereof where the victim is under the age of 16 years,[4] it nevertheless must be accomplished by force or threat of force to constitute one of the underlying felonies under Section 2502(a). *See* note 3 *supra*. Thus, he argues that the evidence fails to provide a basis for the finding of forcible compulsion or the threat thereof necessary to establish either a rape [5] or involuntary deviate sexual intercourse. We cannot agree. The lacerations in the area of the anus and vagina and the injury to the mouth clearly suggest a forcible rather than a consensual act. Additionally, support for this conclusion is provided by the patholo-

poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing. A criminal homicide constitutes murder of the first degree if the actor is engaged in or is an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping.

18 Pa.C.S.A. § 2502(a) (1973).

4. A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:
    (1) by forcible compulsion;
    (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
    (3) who is unconscious;
    (4) who is so mentally deranged or deficient that such person is incapable of consent; or
    (5) who is less than 16 years of age.
    18 Pa.C.S.A. § 3123.

5. Rape is statutorily defined as follows:
    A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:
    (1) by forcible compulsion;
    (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
    (3) who is unconscious; or
    (4) who is so mentally deranged or deficient that such person is incapable of consent. *Id.* § 3121.

gist's opinion that the victim was most likely suffocated during the sexual assault. We are satisfied that there was more than sufficient evidence for the jury to have concluded that the sexual encounter was accomplished by force and that this minor victim was not a willing participant.

We also do not accept appellant's theory that the evidence would not support a finding of kidnapping as an underlying felony.[6] It is argued that since the intent to sexually molest the young victim may have been formed after Tina was in the company of appellant, the evidence fails to establish that he "unlawfully removed" the child "to facilitate [the] commission of any felony" or "to inflict bodily injury on or to terrorize the victim". The fact that appellant left the house seconds after Tina had departed for the expressed purpose of visiting the home of a neighbor; that he gave no indication to the mother before leaving that he intended to intercept the child; and that he did in fact divert her from her original destination but failed to mention that fact to the mother when he saw her later that evening, all combine to provide ample basis for the conclusion that the felonious intent was present when he induced the child to enter his vehicle that evening. It must be remembered that the burden of proof upon the Commonwealth has never been construed to require it to eliminate every conceivable hypothesis of innocence. *Commonwealth v. Nole,* 448 Pa. 62, 292 A.2d 331 (1972); *Commonwealth v. Libonati,* 346 Pa. 504, 31 A.2d 95 (1943).

**6.** 18 Pa.C.S.A. § 2901(a) (1973). This offense is defined as follows:
    (a) Offense defined.—A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
    (1) To hold for ransom or reward, or as a shield or hostage.
    (2) To facilitate commission of any felony or flight thereafter.
    (3) To inflict bodily injury on or to terrorize the victim or another.
    (4) To interfere with the performance by public officials of any governmental or political function.
    *Id.*

Furthermore the crime of kidnapping may also occur without the element of removal, where the offender "unlawfully confines another for a substantial period in a place of isolation . . . [t]o facilitate commission of any felony . . . " *See* note 6 *supra.* Accepting arguendo that the intention to sexually molest was formed only after the child was in appellant's company, there is evidence to justify the belief that he confined her in an isolated place to perform these acts. Thus, under that theory the crime of kidnapping would have been established even if we were to concede the unlikely hypothesis of a belatedly formed intent to molest the child.

Next, turning to the assertion that the prosecution failed to establish beyond a reasonable doubt that death was caused by a criminal agency we also must conclude that that proposition is without merit. The thrust of this argument is that the pathologist, offered by the Commonwealth to prove causation, was not "convinced in his own mind beyond a reasonable doubt" that death resulted from a criminal agency. Proceeding from this premise it is argued that the jury was not provided with an adequate basis for a finding of the causation element beyond a reasonable doubt.

In this prosecution the theory of the Commonwealth required it to prove that death occurred during the perpetration of or the attempt to perpetrate one or more of the assigned underlying felonies and that the killing was a consequence thereof and not merely a coincidence. *Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958).

In support of this theory the Commonwealth, in addition to establishing that the deceased was in the company of appellant at or about the time of her death, produced evidence designed to show how the death occurred. The pathologist, after testifying that death resulted from asphyxiation, stated that the suffocation occurred during a sexual assault, i. e., penile choking, or the obstruction of a sufficient air supply. Thus considering all of the prosecution's evidence the jury was justified in concluding that the accused's actions caused the death and that the conduct

possessed the culpability required for murder of the first degree.

Appellant seizes upon the inability of the pathologist to conclusively rule out drowning as a conceivable circumstance that brought about the death although the doctor stated that it was only a *remote* possibility. It is urged that the failure to absolutely exclude drowning brings this case within the orbit of the doctrine announced in *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971) and *Commonwealth v. Radford*, 428 Pa. 279, 236 A.2d 802 (1968). This argument reflects a misperception of the holdings of *Embry* and *Radford*.

*Embry* and *Radford* proceed from the unquestioned premise that causation, a material element of the offense of murder, must be established beyond a reasonable doubt. These cases therefore reasoned that where the Commonwealth was merely able to prove *probable* causation a motion in arrest of judgment would be justified.[7] However, this Court in *Commonwealth v. Nole, supra,* which was decided after *Embry* and *Radford,* stressed that those decisions were not to be construed as contradicting the axiom that the Commonwealth is not required to prove guilt *beyond all doubt. See also, Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Webb,* 449 Pa. 490, 296 A.2d 734 (1972).

In *Nole,* the expert conceded a hypothesis consistent with innocence "is possible but I consider that possibility in the realm of speculation or absurdity." This Court held that the expert's opinion was sufficient to prove the element of

---

7. In *Radford* the medical evidence offered to prove causation was to the effect that the assault on the deceased by the accused *probably* caused the death. There we held that absent other evidence to confirm this conclusion the record could not support a finding of guilt.

   In *Embry* the pathologist "opined" that the myocardial infarction was caused by the physical and emotional stress occasioned by the purse snatching struggle. Upon review of this testimony this Court concluded that the situation was comparable to *Radford* and that the medical witness' testimony only established a "probability" that the defendant's conduct caused the infarction.

causation. So, too, in *Webb,* the testimony of a single medical witness was held to be sufficient to carry the burden of proving causation where his conclusions were stated with "a reasonable degree of medical certainty and beyond any reasonable doubt that he could find from his medical experience." Also in *Stoltzfus,* we held that the testimony of the medical expert met the test where "he testified emphatically and without qualification that it was his professional opinion that death resulted from a blow."

Assuming for the moment that a finding of death by drowning could be consistent with an hypothesis of innocence under the instant facts, it is nevertheless clear that to insist upon the total exclusion of this possibility would be tantamount to requiring the prosecution to prove this material fact beyond all doubt. It is manifest from the pathologist's testimony that drowning in this case was at best a *remote possibility,* and, therefore, a jury should not be precluded from finding the existence of the material fact beyond a reasonable doubt. *Commonwealth v. Nole, supra.*

Furthermore, we cannot accept, under the factual situation presented, the hypothesis that a determination that death resulted from drowning would be consistent with innocence. Although death by drowning *might* tend to show that the drowning was not simultaneous with the actual acts of sexual, oral and anal intercourse[8] it clearly does not indicate that the drowning was not in furtherance of these objectives or even more probable in attempting to prevent the discovery of the identity of the perpetrator of these foul deeds. To apply the principle of *Embry* and *Radford* to the instant facts would require the prostitution of a legally sound concept.

The next issue we must consider is whether the trial court erred in denying appellant's motion for a new trial after Detective Owen McFadden testified that as part of a routine

---

8. Even this hypothesis is diluted by the fact that the aggressor possessed overwhelming physical superiority and the water was sufficiently shallow as to have rendered it possible that the acts could have been committed simultaneously.

police investigative procedure he checked the appellant's and other suspects' names through the National Crime Index Center (N.C.I.C.). The allegedly objectionable testimony was as follows:

"Q. Mr. Gallagher (District Attorney): Did you participate in the investigation, aiding the prosecutor, Captain Gyorek?

A. Yes, I did.

Q. In pursuance of that investigation, what, if anything, did you do by way of obtaining information about the defendant, Daniel Williams?

A. Read the reports. There were several names that came up in the reports and as a matter of investigative procedure, I attempted to get addresses, names, dates of birth for the purpose of establishing an N.C.I.C. check, which is a National Crime Index Center check.

Mr. Keenan (Defense Counsel): I object to that. May we approach the bench.

(The following discussion took place at side bar:)

Mr. Gallagher: He is not going to testify—

Mr. Keenan: We move for a mistrial.

The Court: The motion is denied. I think he is saying—

Mr. Gallagher: It's usual procedure.

The Court: —it's usual procedure. As long as he doesn't go into findings.

(The discussion at side bar is terminated.)

By Mr. Gallagher:

Q. As part of your investigation, did you look into the records of the Bethlehem Police Department?

A. Yes, sir. I checked the criminal file and then I checked the traffic file."

■ Appellant contends that from this testimony the jury could have inferred that appellant had engaged in prior criminal conduct and that its admission was, therefore, violative of the well-settled rule that an accused's prior criminal activity is inadmissible to prove the commission of the present offense charged. *Commonwealth v. Groce*, 452 Pa.

15, 303 A.2d 917, *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973); *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Burdell,* 380 Pa. 43, 110 A.2d 193 (1955). We do not agree.

In *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71 (1975), we observed:

"[T]he controlling question is whether or not a juror could *reasonably infer* from the facts presented that the accused had engaged in prior criminal activity." *Id.* at 265, 341 A.2d at 72, *quoting Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972) (emphasis added).

In the instant case, the challenged testimony did not link the appellant to any specific prior criminal activity. According to the testimony, the N.C.I.C. check was conducted as to "several names," and this N.C.I.C. check was a routine "investigative procedure." There was no indication that the check proved positive. The testimony was merely a passing reference to a common police practice, and we do not see how the jury could reasonably have inferred from this reference that appellant had in fact engaged in prior criminal activity. *See Commonwealth v. Carlos, supra,* at 265, 341 A.2d at 72. Thus we find appellant's contention to be without merit.

■ Appellant also urges that certain prosecution rebuttal testimony given by Detective Francis Gyorek contained improper references to appellant's exercise of his constitutional privilege against self-incrimination.[9] The record shows that defense counsel's objection to this line of rebuttal testimony challenged only the relevancy of the evidence. Defense counsel first raised the constitutional objection during post-trial motions. It is a firm rule in this jurisdiction that if the ground upon which an objection to the admission of evidence is specifically stated, all other reasons for the exclusion of the evidence are waived and may not be raised thereafter. *Commonwealth v. Stoltzfus, supra* ; *Commonwealth v. McNeal,* 456 Pa. 394, 398, 319 A.2d 669, 672 (1974);

**9.** U.S. Const. Amend. V; Pa.Const. Art. I, § 9. *See* Act of May 23, 1887, P.L. 158, § 10, 19 P.S. § 631 (1964).

*Commonwealth v. Budd,* 443 Pa. 193, 195, 278 A.2d 879, 880 (1971); *Commonwealth v. Raymond,* 412 Pa. 194, 202–203, 194 A.2d 150, 154 (1963). Thus we need not address the merits of appellant's constitutional objection.[10]

■ Appellant's final contention alleges error by the trial court in admitting, over defense objection, testimony offered by a prosecution witness, Charles LaFever, regarding certain incriminating statements made by appellant while appellant was LaFever's cellmate at Northampton County Prison. At trial, counsel for appellant raised timely objection to the testimony thus satisfying the requirement announced in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). Counsel for appellant also properly alleged trial error on this point in written post-trial motions. *See Commonwealth v. Moore,* 462 Pa. 231, 340 A.2d 447 (1975); *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975); *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974). However, counsel for appellant neither briefed nor argued this contention of trial error at the trial court's hearing on post-trial motions. Thus deprived of the benefit of counsel's legal theory underlying the assertion of error, the trial court considered this claim to have been abandoned at the hearing on post-trial motions. We agree that this final contention was abandoned and therefore not properly preserved for appellate review.[11]

10. Appellant does not here pursue the claim that the evidence was not relevant.

11. As in the instant case, the typical written post-trial motion contains allegations of trial error. The logical corollary of the rules enunciated by *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) and *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975) is the requirement that counsel either brief or argue the points of error *raised in the written post-trial motions.* In *Clair,* this Court enumerated the evils which were avoided by abrogating the doctrine of basic and fundamental error and in its place substituting the requirement of timely and specific objection:

the doctrine (1) "removes the professional necessity for [diligent preparation]", (2) penalizes the opposing party, (3) denies the trial court an opportunity to correct the error, (4) erodes the finality of trial court holdings, (5) encourages unnecessary appeals and (6) needlessly discourages alert professional representation.

Judgment of sentence is affirmed.

Former Chief Justice JONES did not participate in the decision of this case.

*Commonwealth v. Clair,* supra, at 421, 326 A.2d at 273, *citing, Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Although *Clair* concerned objections at trial, a requirement that counsel either brief or argue points of error raised in the written post-trial motions similarly furthers the policies underpinning *Clair.*