# Velott et al. *versus* Lewis.

1. The exemplification of the record of a deed, ancient or recent, is not admissible in evidence, to prove title in ejectment, where said record does not contain a certificate of proof or acknowledgment of the deed in accordance with the requirements of the recording Acts in force at the date of its record.

2. Evidence is not admissible to show that in the period when such deed was recorded it was the custom of the recorder's office in that county to record deeds, without recording the certificate of proof or acknowledgment. A recital prefixed to the record of a deed that it had been duly acknowledged, for the purposes of record, before a certain justice of the peace, is insufficient to make the record admissible in evidence.

3. The party calling a witness cannot refresh his memory by reading to him notes of testimony given by him in a former proceeding touching the same subject matter.

4. The record of a suit in ejectment, in which no judgment was entered on the verdict, is not admissible in evidence.

5. The defendant in ejectment may prove that he paid full value for the land in controversy, though it appear to be immaterial to the issue.

6. The admission of irrelevant testimony which tends to lead the jury from the real issue, and may lead them to give undue importance to immaterial facts, is error, and in a proper case will call for reversal. Of such a character is the admission of an executor's account offered for the purpose of showing that a party who claimed a portion of the fund must have had knowledge of a will, duly registered ; or the admission of an

[Velott *v.* Lewis.]

appraisement of a decedent's estate for collateral inheritance tax, to affect a party to a suit in ejectment, by showing that, being an executor of said decedent, he omitted to include in said appraisement the land in controversy.

7. In an action of ejectment, where the main question was as to the character of the title and possession of a predecessor in title of the plaintiffs;—whether as an heir of his mother, on behalf of himself and his brothers and sisters, or as devisee of his father, adversely to his brothers and sisters—it is not error to charge the jury that the evidence to show ouster must be clear of an adverse holding, inconsistent with a joint interest ; that the mere leasing the property, receiving the rent, erecting fences and buildings adapted to the cultivation and profit is insufficient for that purpose.

8. In this case the judge charged the jury : " I do not instruct you that there is no sufficient evidence of an ouster of his co-heirs. It is, however, not so clear and satisfactory as to remove all doubts on this point :" *Held*, that under the evidence, the instruction was faultless.

February 9th 1883.   Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Delaware county :* Of January Term 1883, No. 164.

Ejectment, by George Velott, Annie V. Leland, Abigail Velott, Mary Velott, and Penrose Velott, against Albert P. Lewis, for a tract of land in the borough of Media. Plea, not guilty.

On the trial, before CLAYTON, P. J., the plaintiffs claimed title under one Elias Worrall, deceased. The title of Elias Worrall was disputed by the defendant. The plaintiffs, in order to show title in Elias Worrall, having put in evidence the record of a deed from William Penn, proprietor, to William and Peter Taylor, dated March 3d 1681, for a large tract of land, including the premises in question, offered in evidence the record of a deed from Randle Croxton and wife to Peter Trego, dated October 10th 1734, recorded October 12th 1790, in Delaware county. This deed contained recitals of title by wills, descents and mesne conveyances, from the above mentioned William and Peter Taylor to the said Randle Croxton, grantor.

Defendants objected to the admission of the record of this deed, because it did not appear from the record that the deed was acknowledged or proved as required by law to entitle it to be recorded, and to render the record admissible in evidence.

The record showed that the deed purported to be executed by the marks of Randle Croxton and Sarah, his wife. It was sealed and delivered in the presence of three subscribing witnesses, of whom Peter Taylor was one. It was admitted to record upon the following certificate of proof, to wit:—

[Velott *v*. Lewis.]

" Delaware county, ss.

" Personally appeared before me, the subscriber, one of the justices of the county court of common pleas in and for said county, Nathan Taylor, of Upper Providence, in the said county, and the within written indenture, with the names Randle Croxton (his mark) and Sarah Croxton (her mark) severally signed to a seal, with the name Peter Taylor (inter alia) subscribed as a witness, being shown to him, this appearer, he, upon his solemn affirmation according to law, did declare, affirm and say he verily believes the said indenture was duly executed in the presence of the said Peter Taylor, who was this affirmant's father; for that the name of the said Peter Taylor subscribed as a witness as aforesaid doth well agree with the handwriting of his said late father, this affirmant being well acquainted therewith ; and further this affirmant saith not.

Given under my hand and seal this twelfth day of the tenth month, Anno Domini one thousand seven hundred and ninety.

[L. S.]    JOEL WILLIS.                    NATHAN TAYLOR."

Objection sustained, and offer excluded ; exception. (First assignment of error.)

At a subsequent stage of the trial, the plaintiffs were enabled to show, from the defendant's deeds for an adjoining portion of the tract in dispute, that defendant held the land in controversy under a title derived through the above-mentioned deed, which was recited in one of the deeds in his chain of title. Thereupon counsel were permitted by the court to read from the above deed, and though not formally admitted in evidence, it appeared to have been considered by all parties as in evidence, and was so referred to in the charge of the court.

The plaintiffs, in this manner, deduced title to the land in controversy to Mary Worrall, mother of Elias Worrall. They further proved that Mary Worrall died intestate in 1801, leaving to survive her her husband, Peter Worrall, and seven children, of whom said Elias was one. Peter Worrall occupied the land after the death of his wife as tenant by the curtesy until about 1818, when he died, leaving a will in which he attempted to devise the said tract of land to Elias Worrall for life, and after his death to the children of a deceased son, Jonah Worrall, under whom the defendant claims.

Elias Worrall occupied the land after the death of his father, exercising acts of ownership over it, and not accounting to his brothers and sisters for the rents, &c. His possession continued for a period of forty years, until his death in 1863, when he devised it to James D. Velott and Gordon Tullock, under whom the plaintiffs claim.

On the death of Elias Worrall, the said children of Jonah Worrall brought ejectment against Gordon Tullock for the

land in question, and recovered a verdict in their favor, to May Term 1863, No. 64, but, by inadvertence of counsel, no judgment was entered on the verdict.

Subsequently James D. Velott and Gordon Tullock brought ejectment against said children of Jonah Worrall, to November Term 1863, No. 8, in which a verdict and judgment were entered for defendants. This judgment was reversed on writ of error by the Supreme Court, and a venire facias de novo awarded. The case is reported in 13 Wright 133. On the second trial a verdict was entered in favor of the plaintiffs, James D. Velott and Gordon Tullock. Another ejectment was then brought by the children of Jonah Worrell against Vellott and Tullock, which resulted in a verdict in favor of the plaintiffs, on August 29th 1866, on which judgment was entered.

At the times the several ejectments above referred to were tried, the record of the above mentioned deed of 1734, from Randle Croxton and wife, to Peter Trego, had not been discovered, owing to its having been defectively indexed in the name of Peter Frego, instead of Peter Trego. After its discovery the present ejectment was brought, November 24th 1880.

One of the plaintiff's witnesses, Clayton Smith, sixty-eight years of age, being interrogated as to the condition of buildings on the premises at a former date, said he did not remember the time when a certain addition was put to the log house. He remembered testifying as to the matter in a former proceeding before arbitrators. The plaintiff's counsel then offered to read to the witness what he said on that occasion, first authenticating the notes of evidence. Objected to, because the plaintiffs cannot thus lead their own witness. Objection sustained; exception. (Second assignment of error.)

The defendant offered in evidence the account of the executors of Peter Worrall, in the settlement of his estate, showing that Elias Worrall claimed and received a small sum of money from the executors, and that he therefore knew of the will of his said father Peter Worrall, by which Elias was devised only a life estate in the premises in question. Objected to; objection overruled, and evidence admitted; exception. (Third assignment of error.)

The defendant offered to show that Mordecai Lewis, his predecessor in the title, paid full value for the land in dispute, at public sale, without notice of any adverse claim of title. Objected to; objection overruled; exception. (Fourth assignment of error.)

The defendant offered in evidence the record of the first ejectment suit, above referred to, to May Term 1863, No. 64. Objected to, on the ground that no judgment was entered on

the verdict. Objection overruled; exception. (Fifth assignment of error.)

The defendants offered in evidence the appraisement for collateral inheritance tax of the real and personal estate of James D. Velott, for the purpose of showing that George Velott, one of the plaintiffs here, who was executor of James D. Velott, did not include the premises here in dispute as part of the estate. Objected to; objection overruled; exception. (Sixth assignment of error.)

The defendant offered in evidence the exemplification of record of a lease of the premises in dispute from Randle Croxton and wife to William Carter, dated January 30th 1724, executed by the lessors by their marks, and witnessed by a subscribing witness, but the record did not show any proof or acknowledgment of the instrument.

Also the record of a deed between the same parties, to which was prefixed a recital of acknowledgment by the grantors before Isaac Taylor, a justice of the peace of Chester county, but without a certificate thereof by said justice.

Plaintiff's counsel objected to the admission of said documents, for want of acknowledgment or due proof of execution; Objection overruled; exception. (Seventh assignment of error.)

Defendants then offered to prove that at the date of the recording of said instruments (1724) it was the custom to record all deeds in the same manner that these were, viz: with a mere recital of the acknowledgment, without recording the certificate of acknowledgment. Objected to; objected overruled; exception. (Ninth assignment of error.)

The plaintiffs presented, inter alia, the following point:—

1. If the jury believe that under the evidence, Elias Worrall entered into the property in question at the death of his father as heir of his mother, and continued in exclusive possession until his death, in 1862, exercising acts of ownership over the property, such as cutting timber and selling it, making permanent improvements upon it, claiming it as his own to his nephew, Peter Worrall, offering to sell it as his own, devising it in fee at his death, claiming and collecting the damages for the opening of a road through it, and not accounting in any way to his brothers and sisters for rents received by him, for the proceeds derived from the sale of timber, or in any other manner, and his brothers and sisters never having made any claim upon him, all covering a space of time of over twenty-one years, they may find an ouster by Elias Worrall of his brothers' and sisters' and title by possession to the six-sevenths which descended to them at the death of their mother.

Answer. The plaintiffs' first point is affirmed, but the evi-

[Velott v. Lewis.]

dence of ouster ought to be clear and satisfactory. The other interested parties had the right to suppose he was holding for their mutual benefit. Some act must be shown, sufficient to warn them that he was not holding as heir of his mother, or that he was not holding under his father's will. If you find that the remaindermen in his father's will knew or ought to have known that Elias held adversely to them, the point is affirmed. (Tenth assignment of error.)

The defendant presented, inter alia, the following point:—

3. If the plaintiffs claim that Elias took title from his mother, they must, in order to show title in him to the whole, first show title in the mother, and then show that Elias did some decisive act, or commenced a course of conduct more than twenty-one years prior to April 14th 1863, brought home to the knowledge or notice of his brothers and sisters, by which he ousted them from the possession, and must follow this up by showing a continued, visible, notorious, distinct, and hostile possession in him or those who claim under him, persisted in for twenty-one years. The mere keeping possession, leasing the property, receiving the rent, erecting fences and buildings adapted to its cultivation and profit would be no evidence of ouster.

Answer. The third point is affirmed. (Twelfth assignment of error.)

The court charged the jury, inter alia, substantially as follows :—

"The plaintiffs claim the same title which Elias Worrall had at the time of his decease. His title was as heir of his mother and by twenty-one years' adverse holding. . . . I instruct you that the plaintiff's have made out a good paper title from the commonwealth to Mary Worrall. She died in possession intestate, about 1802, leaving seven children. Her husband, Peter Worrall, the father of Elias, remained in possession. If the land was hers, he had a life estate therein. Elias, her son, was entitled, as one of her heirs, to one undivided seventh. His father, Peter Worrall did make a will, by which he devised the land in question to Elias for life, the remainder in fee to his children if he had any, if none then to the persons through whom the defendants claim title. Elias died without leaving any children.

"If, then, the jury find that Elias took possession after his father's death by virtue of and under his father's will, and not as heir of his mother, then his holding was not adverse as to the remaindermen under his father's will, and in such case, the defendants should recover. His holding for his life estate under the will of his father would be adverse to his brothers' and sisters' title as heirs of the mother, and if such holding

continued for twenty-one years, the mother's estate would be lost.

"But if you find that Elias did not take possession under his father's will, but as heir of his mother, then as before stated, he would hold full title to one-seventh of his mother's interest in the land. If he took open, hostile possession of the whole under a supposed will of his mother, and persisted in such possession for twenty-one years, he would be entitled to the whole by virtue of such adverse holding.

"[I do not instruct you that there is no sufficient evidence of an ouster of his co heirs. It is, however, not as clear and satisfactory, as to remove all doubts on this point.] (Eleventh assignment of error.)

"If his co-heirs knew, or from his conduct ought to have known that he repudiated his father's will and held under his mother's supposed will, this would amount to an ouster. Without such knowledge, or without some decisive act of his amounting to notice that he claimed to own the whole land, his co-heirs might well suppose he was holding for them as well as himself, under their father's will."

Verdict and judgment for the defendant. The plaintiffs took this writ of error, assigning for error the rulings on evidence and the answers to points hereinbefore particularly recited, and the portion of the charge above quoted within brackets.

*William B. Broomall* (*Edmund Jones* with him), for the plaintiffs in error.

*George E. Darlington* (with him *A. Lewis Smith* and *James S. Cummins*), for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, March 5th 1883.

The first, second, fourth, tenth, eleventh and twelfth assignments of error cannot be sustained, as the rulings therein complained of are, in our opinion, faultless. The deed of Randle Croxton and wife to Peter Trego, dated October 10th 1734, ought to have been acknowledged or proved, according to the provisions of the Act of May 28th 1715, in order to admit it of record. Under that Act, an effective probate could only be made by two or more witnesses, and it was therefore held, in the case of Vickroy *v.* McKnight, 4 Bin. 204, that an office copy of a deed, executed prior to the Act of 1775, and proved by but one subscribing witness, could not be admitted in evidence. Admitting, however, that as this deed of Croxton to

Trego was not proved until after the Act of 1775, probate by one witness was all that was required, nevertheless, even such probate has not been produced. This deed purports to have been executed in the presence of three witnesses, whose names are subscribed, but all we have in the way of proof is the probate of Nathan Taylor, made on the 12th of October 1790, to the signature of his father, one of the three witnesses, who, we may infer from the use of the words " his said late father," was at that time dead, but there is no proof that the others were not then in full life, nor does it appear that they could not have been produced. Under such circumstances the secondary proof of handwriting was not admissible. As was said in Peters v. Condron, 2 S. & R. 80. " no person can be permitted to prove a deed, until it appears that the subscribing witnesses are dead, or cannot be had." It follows, that the probate to the deed in controversy was not sufficient to admit it to record under the Act of 1775, hence, the alleged record was properly refused as evidence of title, and ought, in fact, to have been admitted for no purpose whatever.

Under the second assignment we are asked to reverse the court below for its refusal to extend the doctrine of Rothrock v. Gallaher, 10 Nor. 108, to the case of a witness of ordinary health and memory. This we cannot do. There was no evidence tending to show that the witness, Clayton Smith, had, in the interval between the time of the arbitration and trial in court, by old age or otherwise, lost his memory. He but failed to recollect what he had previously sworn to, but if this were enough to admit the notes of a former trial, we might as well abandon original testimony altogether, and supply it with previous notes and depositions. It would certainly be an excellent way to avoid the contradiction of a doubtful witness, for he could always be thus led to the exact words of his former evidence. As we are not yet prepared for an advance of this kind, we must accept the ruling of the court below as correct.

The fourth specification is hardly worth notice. We cannot see how it became necessary to show that Mordecai Lewis paid full value for the land when held by him, since no one called that fact in question, nevertheless, the defendant's right so to do, if he thought it proper, cannot be questioned.

The points covered by the tenth, eleventh and twelfth assignments, were well answered, since they are in accordance with the opinion of this court as found in the case of Tullock v. Worrall, 13 Wr. 133.

Thus far we find no fault with the manner in which this case was tried in the lower court; there are, however, some things which occur in its rulings of which we cannot approve. Inter alia, we are not satisfied that the account of the executors of

Peter Worrall ought to have been admitted as evidence in this case. We ask, what can the account of these executors possibly have to do with this ejectment?—in answer we are told that as Elias Worrall laid in a claim of some sixty dollars against the estate of his father, and had that claim allowed, therefore he must have known of his father's will. A strange way, truly, of proving the knowledge of a will that had become part of the public records, and of which all interested were bound to take notice. The case ought not to have been encumbered by evidence of this kind. It is true, it may seem to have been of no special consequence, and so may be supposed to have done no damage. But its very admission by the court gave it an appearance of importance to the jury that it ought not to have had, and it threw upon the plaintiffs the vexatious task of removing from the mind of that body a prejudicial impression that was totally foreign to the matter in hand. Of a like character was the admission of the appraisement, for the purpose of collateral inheritance tax, of the estate of James D. Velott. How could the executor's neglect to return the land in controversy as part of the estate of his testator, affect the title which James D. Velott may have had in his lifetime? The whole question in controversy turned upon the character of Elias Worrall's title. If that was good, no one doubted the title of Velott and Tullock, his devisees; but if that was not good, they took nothing, and the controversy was at an end. It was therefore to no purpose to attempt in this manner to raise an inference that George Velott was doubtful of his ancestor's title. The evidence led to nothing and ought to have been rejected.

Again, the record of the action of ejectment, No. 64 May T. 1863, ought not to have been admitted in evidence, because there was no judgment on the verdict. Until there is judgment a case is pending and undetermined, for there may be a reversal on a writ of error, or judgment may be arrested. And so it was said by Chief Justice TILGHMAN, in the case of Shaeffer *v.* Kreitzer, 6 Bin. 430: "while the case remains undecided, a verdict in a former ejectment cannot be received as evidence of title, because perhaps the verdict may be set side, and the judgment arrested." It is therefore obvious that this record was inadmissible for any purpose in the way of evidence to affect the title of either of the parties to this case.

Finally; we are of the opinion that both the exemplification of the lease from Randle Croxton and wife, and the record of the deed of the same parties, were improperly admitted. To neither of these was attached probate or acknowledgment, they were, therefore, not the subjects of record. The record of a deed is evidence only by virtue of the act of assembly, and if

[Blooming Grove Mut. Fire Ins. Co. *v.* McAnerney.]

that does not appear to have been complied with, such record is no more evidence than any other copy. Proof of the custom of the recorder's office does not help the matter ; it does not supply the want of a compliance with the terms of the statute, nor can it make an unacknowledged copy evidence.

    The judgment is reversed and a new venire ordered.