353 A.2d 803

**COMMONWEALTH of Pennsylvania**

v.

**James H. HICKS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1975.

Decided March 17, 1976.

---

500

Daniel M. Rendine, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

502

OPINION

NIX, Justice.

Appellant, James H. Hicks, after trial by jury, was convicted of voluntary manslaughter for the death of one Cullen Turner. Post-verdict motions were filed, argued and dismissed. Thereafter, in accordance with recommendations of physicians who examined appellant, the trial judge committed Mr. Hicks to the Farview State Hospital for a term not to exceed six years pursuant to the Mental Health Act, 1966, Special Session No. 3, Oct. 20, P.L. 96, art. IV, § 410, 50 P.S. § 4410 (Supp. 1975–76). *Commonwealth v. Barnes*, 448 Pa. 299, 292 A.2d 348 (1972). This direct appeal followed.[1]

Appellant has raised two allegations of error. Because we find them to be without merit we affirm the judgment of sentence. The facts are not in dispute and reveal that at approximately 9:30 A.M. on November 14, 1972 at Philadelphia, police officers were summoned to 1541 Thompson Street, an apartment house, by Mr. Herbert Chuly and Miss Sally Davis, neighbors of the decedent. The officers responding to the call observed that Cullen Turner was sitting in an upright position on a cot, his body was rigid and showed no signs of life. The police officers observed bruises and dried blood about the decedent's head and body. A three foot long wooden banister rung was found near the body on the floor. The witnesses testified that on this piece of wood there was a substance which appeared to be dried blood.

While the officers were waiting for further assistance from members of the Homicide Division, the front doorbell rang. A detective at the scene told the visitor, James Hicks, that due to a police investigation, no one

1. The jurisdictional basis for this appeal is pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202.

could enter the building. Appellant insisted that he wanted to retrieve a radio he had left in the apartment the day before. He told the detective he knew the man in the second floor apartment had it and had given that individual "a few licks" because he would not return it. At that point, the detective stopped the conversation, arrested James Hicks and informed appellant he would have to go to the Homicide Division. Appellant was transported to the Police Administration Building and at 11:50 A.M. warned of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant indicated he understood his rights and was willing to tell the officers what happened. Thereupon, appellant amplified his prior admissions by stating that when the decedent refused to give him the radio, appellant hit him several times about the head and body with a stick and his fists. This beating occurred the previous afternoon.

Appellant now asserts that the evidence of causation was not sufficient beyond a reasonable doubt to sustain his criminal responsibility for the death of Cullen Turner. We do not agree. Dr. Halbert Fillinger, Assistant Medical Examiner, testifying for the Commonwealth, described the decedent's lacerations and contusions of the head, face and legs and the fracture of one rib. Dr. Fillinger stated that Mr. Turner, age 61, had severe emphysema and arteriosclerosis. He concluded, based on his personal examination of the deceased, that the multiplicity of blows complicated a pre-existing heart condition causing death. The witness opined that Mr. Turner had been dead approximately 18 hours when examined. This finding was consistent with the appellant's statement as to when the blows were administered by him and would indicate that it was as a result of the injuries sustained during that altercation from which the death ultimately resulted.

Dr. Victor Digilio, a doctor of internal medicine, specializing in cardiovascular diseases, testified on behalf of the defendant. He stated that in his belief, the sudden cardiac arrest was due solely to the coronary disease and from the effects of the significant level of alcohol in the decedent's system. His opinion was based exclusively on his reading of the postmortem examination report prepared by Dr. Fillinger. Dr. Digilio questioned the conclusions reached by Dr. Fillinger as to the time of death and the effect of the beating. However, he conceded that heart failure could have been brought about by excitement or fright.

The Commonwealth must prove that appellant's blows were the legal cause of death beyond a reasonable doubt. *Commonwealth v. Baker,* 466 Pa. 382, 353 A.2d 406 (1976); *Commonwealth v. Bamber,* 463 Pa. 216, 344 A.2d 799 (1975); *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Odom,* 448 Pa. 474, 295 A.2d 331 (1972); *Commonwealth v. Nole,* 448 Pa. 62, 292 A.2d 331 (1972). However, causation is an issue of fact for the jury to decide. *Commonwealth v. Carn,* 449 Pa. 288, 296 A.2d 753 (1972); *Commonwealth v. Johnson,* 445 Pa. 276, 284 A. 2d 734 (1971). The jury was free to accept the medical opinion of the Commonwealth's pathologist and reject the opinions of the defense expert witness. *Commonwealth v. Bamber, supra.* It is clear that accepting as true all the evidence and all reasonable inferences therefrom, in a light most favorable to the Commonwealth, the jury had sufficient basis to conclude beyond a reasonable doubt that the blows delivered by the banister rung and appellant's fists were the legal cause of Turner's demise. *Commonwealth v. Tinsley,* 465 Pa. 329, 350 A.2d 791 (1976); *Commonwealth v. Green,* 464 Pa. 557, 347 A.2d 682 (1975); *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Carn, supra.*

■■ Contrary to the assertions of appellant this finding is not weakened by the medical testimony that the deceased had been drinking before his death. Nor does this testimony necessarily create a reasonable doubt as to causation. See *Commonwealth v. Newkirk*, 455 Pa. 559, 562, 317 A.2d 216, 217 (1974) (and cases cited therein). An accused may not escape criminal liability on the ground that, prior to the criminal act, his victim was not in perfect health, or the blow he inflicted was not mortal, or the immediate cause of death. If his blow started the chain of causation which led ȶo the death, he is guilty of homicide. *Commonwealth v. Baker, supra; Commonwealth v. Newkirk, supra; Commonwealth v. Stafford, supra; Commonwealth v. Odom, supra; Commonwealth v. Cheeks*, 423 Pa. 67, 73, 223 A.2d 291, 294 (1966).

Appellant also asserts that the signed statement given to the police at their headquarters should not have been admitted at trial because he was illiterate and because he was not advised of the purpose of the interrogation.[2] The record does not support appellant's position.

■■ This Court has consistently refused to adhere to a *per se* rule of incapacity to waive constitutional rights based on mental or physical deficiencies. *Commonwealth v. Scoggins*, 451 Pa. 472, 476, 304 A.2d 102 (1973); *Commonwealth v. Daniels*, 451 Pa. 163, 168, 301 A.2d 841, 844 (1973). Rather, we look at all the circumstances to determine if a knowing and intelligent waiver was effected. There is no question that a person of below average mental ability can effectively waive his constitutional rights. *Commonwealth v. Abrams*, 443 Pa. 295, 278 A.2d 902 (1971). The officers who interviewed Mr. Hicks stated he was responsive to their questions and appeared to understand what was going on. They stated that they informed him why they were going to

2. The admissibility of the initial oral statement given to the detective at the scene of the crime has not been challenged here.

question him and because they were aware that he could not read or write, they read to him the typewritten statement before he signed it. Appellant was given his *Miranda, supra* warnings at 11:50 A.M. and immediately thereafter orally admitted his involvement in the crime. After lunch, he was given the warnings again and repeated his desire to waive his constitutional rights. Appellant dictated his version' which was recorded verbatim and signed by him. Under these circumstances we have no difficulty in finding the inculpatory statements voluntary and properly admitted. *Commonwealth ex rel. Joyner v. Brierly*, 429 Pa. 156, 239 A.2d 434 (1968).

Judgment of sentence affirmed.