398 A.2d 644

**COMMONWEALTH of Pennsylvania**

v.

**Daniel Lee GRAVES, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1978.

Decided March 14, 1979.

* Appellant argued that the negotiated plea was not knowingly entered.

James C. Hogan, Easton, for appellant.

John E. Gallagher, Dist. Atty., Richard J. Shiroff, Asst. Dist. Atty., Easton, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Daniel Lee Graves, was tried for the first time before a jury on June 26, 1972, and found guilty of murder of the first degree, robbery and burglary. On appeal, we reversed the judgment of sentence and awarded a new trial. *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). Appellant's retrial, also before a jury, resulted in verdicts of guilty of murder of the first degree, robbery and burglary. Sentence of life imprisonment was imposed on the murder conviction with concurrent five to ten year sentences for the

robbery and burglary convictions. Post-verdict motions were denied by the trial court, and this appeal followed.[1]

■ Appellant's first contention is that the evidence is insufficient to support a finding that his actions caused the victim's death. As with all challenges to the sufficiency of the evidence, we consider the evidence in a light most favorable to the verdict winner, here the Commonwealth. *See, e. g., Commonwealth v. Williams,* 476 Pa. 557, 560, 383 A.2d 503, 504 (1978). The salient facts are as follows:

On September 28, 1971, appellant and two others burglarized the residence of Sebastiano Patiri, who, at the time, was seventy-five years of age. During the course of the robbery and burglary, Patiri sustained certain injuries for treatment of which he was admitted to a local hospital. While in the recovery room following the surgery that was necessitated by the injuries received in the robbery/burglary, Patiri died.

The prosecution produced two expert witnesses, who testified as to the victim's physical condition when admitted to the hospital, and gave their opinions as to the cause of his death. The first of these witnesses was Dr. Isadore Mihalakis, the pathologist who performed the autopsy on Mr. Patiri's body. Dr. Mihalakis testified, in part, that the seventy-five year old victim's general health condition was poor, and that he was arteriosclerotic, with cardiac and brain arteries functioning at only 30% of their normal capacity. Dr. Mihalakis also testified that "death was due to cardiopulmonary arrest, meaning lung and heart stoppage." The witness expressed the opinion that the injuries sustained in the assault combined with a general state of health caused his death.

The prosecution's second expert witness was Dr. Donald Smith, a physician who had examined the victim while he was yet alive. This witness testified that the wounds "were quite likely compatible with survival," and "that he had

---

1. This Court's jurisdiction is based upon Section 202(1) of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.202(1) (Supp. 1978–79), superseded by 42 Pa. C.S.A. § 722(1) (1978 Pamphlet, Part I).

every reason to believe the victim would survive after surgery." Dr. Smith also stated that neither the wounds themselves, the corrective surgery that he performed, nor the anesthesia, individually or collectively, were such as to create a reasonable medical expectation that death would result. He further testified that the wounds, " . . . necessitated [the victim's] admission and evaluation in the emergency room", and that the resultant surgery did lead to his death.

The evidence also revealed that the victim had sustained seven knife-stab wounds to the body. Four of these seven stab wounds were of sufficient depth to penetrate internal organs; two wounds, one of which was two and one-half inches deep and the other of which was two and one-quarter inches deep, penetrated the victim's lung; another three inches deep, perforated the lower lobe of the lung, perforated the diaphragm, and penetrated the liver to a depth of three-fourths of an inch; another, two and one-half inches deep, penetrated the right lobe of the liver to a depth of one inch. The stab wounds caused extensive hemorrhaging in the abdominal cavity. Additionally, the victim had received blows to the face and chest which resulted in multiple bruises, a laceration over the right eye, a fracture to the nasal bone, and two fractured ribs.

■ The above evidence is clearly sufficient to support a finding that the wounds inflicted by appellant initiated the chain of events which ultimately led to the victim's death. Furthermore, appellant cannot insulate himself from criminal liability on the theory that the victim's pre-existing physical infirmities contributed to his demise. *See Commonwealth v. Hicks,* 483 Pa. 305, 313, 396 A.2d 1183, 1187 (1979) *quoting Commonwealth v. Hicks,* 466 Pa. 499, 505, 353 A.2d 803, 805 (1976). Therefore, appellant's challenge to the sufficiency of the evidence of causation is without merit.

■ Next appellant contends that the trial judge erred in admitting, over defense objection, the prior testimony given by a prosecution witness at appellant's first trial. The

circumstances surrounding the admission of this prior testimony are crucial to our disposition of appellant's allegation of error.[2]

The instant appeal is from appellant's second trial on these charges. The prosecution called one Edward Mathis as a witness at both trials. According to the record, Mathis was an accomplice to the offense for which appellant was being tried and had been convicted on a guilty plea of lesser offenses than those for which appellant was charged. At the time of appellant's second trial Mathis had served his minimum sentence and was on parole (at the time of appellant's first trial, Mathis had not yet been sentenced.) At appellant's first trial Mathis' testimony implicated appellant. At the second trial Mathis denied recollection of many of the events surrounding the crimes for which appellant was charged.[3] At that point the prosecution was permitted to attempt to refresh Mathis' memory by questioning him regarding testimony he gave at appellant's first trial. The trial court then ordered Mathis to submit to a mental examination by a court-appointed psychiatric specialist. An examination lasting approximately one and one-half hours was conducted by the psychiatrist, following which, the psychiatrist testified, out of the hearing of the jury, regarding Mathis' competency. Following this testimony, the defense asked for a ruling on the competency of the witness. The Court refused to rule that the witness was incompetent.

The jury was reconvened, and Mathis was again called to the stand and questioned by the assistant district attorney. He then testified that reading the transcript had refreshed his recollection to some extent; that he knew appellant, who

2. This writer has expressed concern where the nature of the prior proceeding was such that there is doubt as to whether the appellant received the full benefit of the right of confrontation. *See, e. g. Commonwealth v. Stasko,* 471 Pa. 373, 387, 370 A.2d 350, 357 (1977). This case does not present such a problem.

3. The criminal episode occurred on September 28, 1971, and appellant's first trial was on June 26, 1972. Appellant's second trial commenced on October 1, 1975, and Mathis was first called to the stand on October 3, 1975.

was his cousin; that he was related to Thomas Mathis, another co-defendant; that he had an opportunity to look at the transcript, and that he could remember some parts of the record; that he recalled testifying at appellant's first trial; that he had an independent recollection of the date of the offense; that he was at the Front Street park with appellant and Thomas Mathis at that time; that he recalled leaving the park, and going to the South Side, where he, appellant, and Thomas Mathis went into a house; that he remembered events other than entering the house; that he remembered looking at a window and seeing the ground, appellant, Thomas Mathis, and an old guy; that they were just standing there outside the window. He also said that he vaguely remembered what the house looked like and remembered running from the house, crossing a bridge, going up the side of a hill to the other side of town; that appellant and Thomas Mathis were with him when he crossed the bridge; that he thought there was money, and that one of them had it; that the three had divided the money; that he did not remember how much money he got; that he does not recall a knife on the day that he entered the house; and that he recalled drinking down at the park before they left to go South Side.

Following this testimony, the trial judge again ordered the jury removed from the court room. Out of the jury's hearing, Mathis testified in answer to questions by the Court that he could "sit down and read the book and remember from the book . . ." (referring to the transcript of his testimony at the first trial). Mathis protested to the Court that he simply could not remember all the events of the day in question.

The trial court then ruled that these recollections were so general in nature that the witness was "unavailable" to the prosecution, that such unavailability resulted from his memory loss, and that the prosecution was therefore entitled to have the transcript of the testimony given by Mathis at appellant's first trial read to the jury. Appellant contends that this ruling was erroneous. For the following reasons, we disagree.

36

■ In effect, appellant argues that the admissibility of Mathis' prior testimony should be controlled exclusively by *Commonwealth v. Turner,* 389 Pa. 239, 133 A.2d 187 (1957), which applied the Act of May 23, 1887, P.L. 158, § 3, 19 P.S. § 582 (1964). The Act provides:

> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, *if such witness afterwards die,* or *be out of the jurisdiction* so that he cannot be effectively served with a subpoena, or *if he cannot be found,* or *if he become incompetent to testify* for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue; but, for the purpose of contradicting a witness, the testimony given by him in another or in a former proceeding may be orally proved. *Id.* (emphasis added).

From this premise, appellant would have us conclude that because none of four enumerated conditions in the Act have been satisfied with respect to the witness Mathis, Mathis' prior testimony was inadmissible. This conclusion would be correct if the premise was correct. However, the Act of 1887 clearly contemplates only those situations where the witness is physically absent or incompetent to testify, and this Court has stated that the common law hearsay exception for prior testimony was not affected by the Act. *Commonwealth v. Stasko,* 471 Pa. 373, 370 A.2d 350 (1977); *Commonwealth v. Clarkson,* 438 Pa. 523, 265 A.2d 802 (1970); *Commonwealth v. Ryhal,* 274 Pa. 401, 118 A. 358 (1922); *see Commonwealth v. Rodgers,* 472 Pa. 435, 452 n.7, 372 A.2d 771, 779 n.7 (1977). *See generally, McDonnell v. United States,* 472 F.2d 1153 (8th Cir. 1973); Fed.R.Evid. 804(b)(1); McCormick on Evidence § 253 (1972). Therefore, we cannot now accept appellant's basic premise that the Act of 1887 is the exclusive means by which a witness' prior testimony may be admitted into evidence at trial.

Because both the trial judge and appellee relied upon the common law hearsay exception for the admission of the prior testimony,[4] the critical question is whether the witness was, for purposes of this exception, "unavailable" due to his lack of memory. Over a century ago, this Court held that lack of memory did render a witness unavailable for purposes of the common law exception for prior testimony. *Emig. v. Diehl*, 76 Pa. 359, 373 (1874); *Rothrock v. Gallaher*, 91 Pa. 108, 112–13 (1879); *Lafferty's Est.*, 184 Pa. 502, 513, 39 A. 1116 (1898) (dictum); *see Molloy v. U. S. Express Co.*, 22 Pa.Super. 173, 179 (1903) (dictum); *accord* McCormick, *supra*. The logic underlying this holding was cogently set forth in *Rothrock* :

> We cannot see any substantial reason why the testimony of a witness once duly taken in a pending cause may not afterwards be read in evidence in another cause between the same parties in regard to the same subject-matter, when in the interval the witness has lost his memory by reason of old age and ill health. The justice and propriety of receiving the evidence are as strong as if the witness were dead, insane, out of the jurisdiction of the court, or unable to attend by reason of sickness. Although bodily present, yet if shown to have become so bereft of memory by senility or sickness, that he is unable to recall a past transaction to which he had once testified and has forgotten that he ever testified in regard to it, he may be considered as practically absent, and his former testimony, if otherwise admissible, may be read in evidence.

*Rothrock v. Gallaher, supra,* 91 Pa. at 112–13.

The Federal Rules of Evidence embrace this view also Fed. R.Evid. 804(a)(3).

4. Appellant challenges the trial judge's refusal to rule on the competency of Mathis. In light of the fact that the trial judge was basing the admission of the prior testimony upon the common law of evidence rather than the Act of 1887, a ruling on competency would have been immaterial. Therefore, the court's refusal to rule is of no moment.

The narrower issue in this case is whether what appears to be the witness' *partial* lack of memory renders him unavailable for purposes of the common law exception. Although there is authority to the contrary, *see Velott v. Lewis,* 102 Pa. 326 (1883), the better view seems to be that partial memory loss also renders the witness unavailable and the prior testimony as well as the present testimony is admissible:

> The inconvenience of this narrow view, that forgetfulness is not a ground of unavailability, it seems, should be avoided by treating lapse of memory if complete as a ground of unavailability, *or if partial as a ground for admitting both the former, and the present testimony of the witness.*

McCormick, *supra,* at 611–12 (emphasis added) (citation omitted), *citing Anderson v. Gaither,* 120 Fla. 263, 162 So. 877, 879 (1935) (citing other authority). This approach has the value of fairness to both parties in that necessary testimony is admitted, with the opponent being permitted to cross-examine the witness both as to his asserted lack of memory as well as to his present testimony. This in fact is what happened at trial in the instant case.[5] Therefore, we hold that the trial judge properly admitted Mathis' prior testimony.[6]

Accordingly, judgment of sentence is affirmed.

5. We do not believe that there is a necessity to limit this exception to instances where old age or ill health is assigned as the cause for the memory lapse. Whatever reason is offered for the witness' failure to recall the events to which he previously testified can be challenged since the witness is available and subject to inquiry upon the subject. This situation is, of course, to be distinguished from situations where the witness attempts to use faulty memory as a basis for offering a different version at the subsequent proceeding. In the latter instance, the rules of impeachment would be applicable.

6. Appellant has also raised the following allegations of error: that the trial judge erred in denying a requested point for charge which stated the exact difference, in years, between the offenses initially charged against Edward Mathis and the offenses to which he eventually pleaded guilty; that the trial judge erred in admitting certain photographic evidence; that the trial judge erred in refusing to instruct the jury on the defense of insanity; that the trial judge

POMEROY, former J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joined.

MANDERINO, Justice, dissenting.

I dissent. The majority states that the witness's former testimony was admissible at appellant's second trial because of a common law exception to the hearsay rule allowing use of prior testimony. In support of this proposition, the majority quotes from *Rothrock v. Gallaher*, 91 Pa. 108, 112–113 (1879), as follows:

> "We cannot see any substantial reason why the testimony of a witness once duly taken in a pending cause may not afterwards be read in evidence in another cause between the same parties in regard to the same subject-matter, when in the interval the witness has lost his memory *by reason of old age and ill health.* The justice and propriety of receiving the evidence are as strong as if the witness were dead, insane, out of the jurisdiction of the court, or unable to attend by reason of sickness. Although bodily present, yet *if shown to have become so bereft of memory by senility or sickness, that he is unable to recall* a past transaction to which he had once testified and has forgotten that he ever testified in regard to it, *he may be considered as practically absent, and his former testimony, if otherwise admissible, may be read in evidence.* (Emphasis added.)

The majority then concludes that although ". . . no Pennsylvania authority on point . . . ," has been located, we should extend the *Rothrock* rationale to a situation such as present here, where the witness, otherwise normal and in good health, experiences a partial memory loss. I strongly disagree. Extension of the *Rothrock* rationale to cases like the instant case was correctly and unequivocally

instructed the jury incorrectly as to the proper use of defense psychiatric testimony. We have carefully considered these allegations and find them to be without merit.

40

rejected as long ago as 1883, and should be rejected here. In *Velott v. Lewis,* 102 Pa. 326 (1883), this Court said,

"Under the second assignment we are asked to reverse the court below for its refusal to extend the doctrine of *Rothrock v. Gallaher,* 10 Nor. 108, to the case of a witness of ordinary health and memory. This we cannot do. There was no evidence tending to show that the witness, Clayton Smith, had, in the interval between the time of the arbitration and trial in court, by old age or otherwise, lost his memory. He but failed to recollect what he had previously sworn to, but if this were enough to admit the notes of a former trial, we might as well abandon original testimony altogether, and supply it with previous notes and depositions. It would certainly be an excellent way to avoid the contradiction of a doubtful witness, for he could always be thus led to the exact words of his former evidence. As we are not yet prepared for an advance of this kind, we must accept the ruling of the court below as correct." Id. at 333.

*See also Reed v. Orton,* 105 Pa. 294 (1884) and *Putnam v. United States,* 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118 (1895) (both courts quoting with approval the above portion of *Velott v. Lewis* ).

The instant case is controlled by *Commonwealth v. Turner,* 389 Pa. 239, 133 A.2d 187 (1957). Turner, like appellant here was tried for the second time. The principal prosecution witness at Turner's prior trial had been a co-defendant. At the prior trial, this witness had implicated Turner in the crimes for which he was on trial, but after that trial the witness denied that Turner had anything to do with the crimes. Despite this recantation, the prosecution called the co-defendant to testify at the second trial, and when the witness denied knowledge of the crime, the prosecution pleaded surprise and was permitted to introduce his prior testimony.

We reversed, concluding that the witness was not "unavailable" according to the Act of May 23, 1887, P.L. 158, § 3 (19 P.S. § 582).

"Obviously, [the witness] was not an unavailable witness either within the letter or the spirit of the Act of May 23, 1887, P.L. 158[, 19 P.S. § 681 et seq.]. Not only was he then present in the courtroom but was actually *on the witness stand at the time*. Nor had he refused to testify to what he then avowed to be the truth. (emphasis added). The fact is that he was willing to testify in accordance with his recantation. The matter of his affidavit having in the course of the colloquy between the court and counsel become known to the trial judge (who was trying the case for his first time), the court stated, 'This man has been called as a witness. He says that this paper is the truth and he says he wants to tell the truth. In other words, he wants to testify to those facts.' Such being the witness' status, the court very properly refused the district attorney's motion to read [the witness'] former testimony in evidence as that of *an unavailable witness*." (Emphasis in original.) *Id.* at 250, 133 A.2d at 192.

The Act of May 23, 1887, P.L. 158 § 3 (19 P.S. § 582) states:

"Whenever any person has been examined as a witness, either for the commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, *if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial* of the same criminal issue; . . ." (Emphasis added.)

The above Act permits the notes of a prior trial to be introduced in a subsequent trial in four situations. None of these is present in this case. Like the witness in *Turner, supra,* Mathis was not an unavailable witness. He was not dead, nor was he out of the court's jurisdiction; he was present in court, on the witness stand, and willing to testify as to what he then avowed to be the truth. Like the witness

in *Turner,* he was now willing to testify in accordance with his present recollection of the incident in question, and was willing to swear to the truth of that testimony. The Act also contains a provision that allows use of prior transcribed testimony "if [the witness] become[s] incompetent to testify for any legally sufficient reason properly proven." No such proof of incompetency exists in this case. Although the court ordered Mathis to submit to an examination by a court appointed psychiatrist, who then reported his findings to the court, and although defense counsel specifically requested the court to rule on Mathis' competency to testify, the court refused to declare him incompetent to testify. Allowing the prosecution to introduce his prior testimony was therefore error.

Reading the notes of the witness' prior testimony leaves the jury with double impact. First, its incriminating nature is self-evident. The witness' testimony at appellant's first trial was extremely damaging, directly and unequivocally implicating appellant in the incident which resulted in death, whereas at appellant's second trial, the witness said he could not remember whether or not appellant wielded the murder weapon. We will not speculate as to which was the more truthful version. At the time of appellant's first trial the witness had been convicted but not yet sentenced. It may be that he felt it would be to his advantage to falsely implicate appellant at that time. At appellant's second trial the witness was no longer in danger of prosecution, and may have been telling the truth. Nevertheless, permitting the prosecution to read his previous testimony allowed the jury to draw the additional inference that this now freed accomplice was limiting his present testimony in order to protect his cousin who was still on trial, and the concomitant inference that he was trying to hide his prior testimony so as not to injure his cousin. As we said in *Commonwealth v. Turner, supra,* 389 Pa. at 256, 133 A.2d at 195,

> "It is wholly unrealistic to pretend that the jury was capable of eradicating from their minds [the witness'] former testimony except for its effect in currently

impeaching him. Even if the jurors tried ever so conscientiously to so limit the effect of the witness's prior testimony and concluded that, by reason thereof, he was not presently worthy of belief, the resultant psychological effect would be to cause the jury to deduce that what [the witness] had first testified to was the truth. The harm to the defendant from the improper cross-examination is . . . manifest . . . ." *Id.*, 389 Pa. at 256, 133 A.2d at 195.

Judgment of sentence should be reversed, and a new trial granted.

ROBERTS, J., joins in this dissenting opinion.