726 A.2d 378

**COMMONWEALTH of Pennsylvania**

**v.**

**Dominick "Butch" RIZZO,**

**Appeal of Mark Bradley Reighard.**

**Commonwealth of Pennsylvania**

**v.**

**Dominick "Butch" Rizzo,**

**Appeal of James Hyland.**

Supreme Court of Pennsylvania.

Argued March 9, 1998.

Decided March 25, 1999.

Norman A. Krumenacker, Jr., Johnstown, for Mark B. Reighard.

Gary B. Zimmerman, Pittsburgh, for James Hyland.

Marianne E. Kreisher, Harrisburg, Donna McClelland, Pittsburgh, for the Com.

David J. Weaver, Johnstown, for Dominick Rizzo.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

The sole issue in this case is whether a witness in a criminal case who has been granted immunity and refuses to testify is "unavailable" within the meaning of Pa.R.Crim.P. 9015.

The appellants in this case, Mark Reighard and James Hyland, are witnesses in a criminal action against one Dominic Rizzo, who is accused of illegal drug trafficking and conspiracy. In 1992, both Reighard and Hyland testified before a grand jury concerning their illicit dealings with Rizzo. Hyland testified without immunity and Reighard testified pursuant to an order of use immunity.

Following the grand jury appearances of Hyland and Reighard, the prosecution became aware that both witnesses might refuse to testify at the Rizzo trial. The Commonwealth, therefore, requested and the trial court granted orders of use immunity for both witnesses in January of 1995. The Rizzo case was listed for trial on May 30, 1995. On May 22, 1995, the Commonwealth, at a pre-trial hearing in the Rizzo case, moved to schedule a hearing in order to determine whether Hyland and Reighard would refuse to testify at trial. At the May 22 hearing, the Commonwealth indicated that Hyland had stated to police that he would not testify against Rizzo, and that police conversations with Reighard's counsel suggested that Reighard would also refuse to testify. The trial court granted the Commonwealth's motion for a pre-trial hearing on the matter of whether the witnesses intended to testify at trial, and on May 26, 1995 a hearing was conducted pursuant to Pa.R.Crim.P. 9015, which provides, in pertinent part:

**Rule 9015. PRESERVATION OF TESTIMONY AFTER INSTITUTION OF CRIMINAL PROCEEDINGS.**

1. By Court Order.

(a) At any time after the institution of a criminal proceeding, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the

testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved.

(b) The court shall state on the record the grounds on which the order is based.

(c) The court's order shall specify the time and place for the taking of the testimony, the manner in which the testimony shall be recorded and preserved, and the procedures for custody of the recorded testimony.

(d) The testimony shall be taken in the presence of the court, the attorney for the Commonwealth, the defendant(s), and defense counsel, unless otherwise ordered.

(e) The preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding.

At the hearing, both witnesses refused to testify. Reighard's counsel stated that Reighard had received threats and was in fear for his life. Hyland stated that he was refusing to testify pursuant to an assertion of his rights under the Fifth Amendment and under Article 1, Section 9 of the Pennsylvania Constitution and because the grant of immunity was invalid. The court continued the matter until May 30, 1995 to give the witnesses an opportunity to reconsider their refusals to testify. On May 30, both Reighard and Hyland continued to refuse to answer and the court found each in civil contempt. Both were committed to the Somerset County Jail until such time as they agreed to appear before the court and testify fully in the criminal matter.[1] The court also granted the Commonwealth's motion for continuance of the Rizzo case and dismissed the Rizzo jury. Since the jury had not been sworn, jeopardy had not attached.

█ The trial court found that in the circumstances of this case, a hearing was required to protect the judicial process and the administration of justice and to insure a fair trial.

1. Both Hyland and Reighard were released on bail pending their appeals.

The Commonwealth and the trial court believed that if pre-trial testimony of these witnesses were not taken, there would be a disruption of the trial process, for once the jury were sworn, jeopardy would attach and the prosecution, which depended upon the testimony of these witnesses, would be frustrated. The court found that Rule 9015 was an appropriate vehicle to convene the hearing since the circumstances were exceptional.[2]

On July 21, 1995 the trial court issued an opinion and both appellants took timely appeals to the Superior Court. The Superior Court, with one judge dissenting, held that Rule 9015 was properly invoked in the exceptional circumstances of this case, that the witnesses were unavailable within the meaning of the rule, and that the May 26, 1995 hearing was proper as a de facto hearing regarding the validity of the grant of immunity and also pursuant to Rule 9015 .[3] Judge Johnson, dissenting, held that before a hearing under Rule 9015 can take place, there must be a determination that a witness is unavailable or that exceptional circumstances exist, and here the court failed to make this preliminary determination. Further, he concluded that the witnesses were not unavailable as that term is intended in Rule 9015, and that the court's belief that the witnesses would refuse to testify does not constitute unavailability under the rule because in this situation there is no testimony to be preserved. Judge Johnson further asserted that there are no exceptional circumstances in this case and that both Reighard and Hyland were available for trial.

We granted allocatur. The sole issue before us is whether Pa.R.Crim.P. 9015 authorizes the hearing and the subsequent contempt citations which were made in this case.

**2.** Pennsylvania law permits the admission of prior recorded testimony from a preliminary hearing as an exception to the hearsay rule when the witness is unavailable, the defendant had counsel, and the defendant had a full and fair opportunity for cross-examination at the preliminary hearing. *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603, 605 (1986). In this case, however, the preliminary hearing was waived and so no prior testimony was taken.

**3.** The Superior Court also addressed other matters not relevant to the issue raised in this appeal.

The Commonwealth in the hearing of May 26, 1995 plainly stated its reasons for demanding the pre-trial proceeding:

The two witnesses that—the two witnesses at issue here have testimony that's crucial to the Commonwealth's prosecution of Mr. Rizzo. Without the testimony of these witnesses, the prosecution of Mr. Rizzo probably cannot proceed. And if we do not take steps now to, first of all, find out whether either of the witnesses intend to refuse to answer questions despite the fact that they've been immunized by order of this court, and then going to the second step, preserving their testimony irregardless of their answer to that first question—Rule 9015 talks about "may be unavailable," and the Commonwealth would submit that at this point it's quite clear that the "may be unavailable" standard has been met here.

   \*  \*  \*  \*  \*  \*

The down side to not following the procedure allowed this court by 9015 is the following: if we proceed to trial, we have a jury that's been picked but not yet been sworn. Jeopardy has not attached with respect to Mr. Rizzo. Accordingly, if the case were to fold in some fashion at this point, charges could be reinstituted, and no successful double-jeopardy claim could be made.

On the other hand, after the jury has been sworn and jeopardy attaches, depending on the circumstances that caused the case to dissolve, there may in fact then be a legitimate double-jeopardy argument that can be raised by counsel for Mr. Rizzo.

N.T. May 26, 1995, 23–25. In short, the Commonwealth, whose case against Rizzo depended on the testimony of Hyland and Reighard, anticipated that Hyland and Reighard would refuse to testify and wished to coerce their testimony. If the witnesses refused to testify and were found in contempt prior to trial, there would be no double jeopardy problem, for there would be no jury. On the other hand, if the refusals to testify did not occur until after a jury were sworn, and if Hyland and Reihard were then imprisoned pending their testimony, they might remain unwilling to testify, knowing

that the jury had been sworn and that the court would retain the jury for only a limited duration. In the event they continued intransigent, the jury might be discharged without ever hearing any testimony. If the Commonwealth later attempted another prosecution on the same charges, Rizzo predictably would raise a double jeopardy defense.

These concerns notwithstanding, Rule 9015 concerns the preservation of testimony. Since the essence of what Hyland and Reighard are saying is that they will not testify, there is no testimony to be preserved. Furthermore, as the comment to the rule indicates, the rule should be used only when it is anticipated that the witness will be unable to be present at the trial:

> "May be unavailable," as used in paragraph 1, is intended to include situations in which the court has reason to believe that the witness will be unable to be present or to testify at the trial or other proceeding, such as when the witness is dying, or will be out of the jurisdiction and therefore cannot be effectively served with a subpoena, or may become incompetent to testify for any legally sufficient reason.

Comment to Pa.R.Crim.P. 9015. In this case, the Commonwealth anticipated not that the witnesses would be absent from the trial or incapacitated, but that they would be present at trial, albeit unwilling to cooperate in providing testimony. Being present but unwilling to testify, however, does not constitute being "unavailable." To the contrary, being present constitutes being available.

As for the Commonwealth's claim that whether or not the witness is available, there are exceptional circumstances in this case which justify the pre-trial taking of testimony, we disagree. It is not exceptional that witnesses refuse to testify in the manner which the Commonwealth might wish.

We conclude, therefore, that Rule 9015 does not apply because there is no testimony to preserve and the witnesses are not unavailable for trial within the meaning of Rule 9015. The trial court, therefore, was without authority to conduct

hearings or to compel testimony from Hyland and Reighard prior to the Rizzo trial.

Were we to hold otherwise, in any case involving a recalcitrant witness, nothing would prevent the Commonwealth from convening Rule 9015 hearings in advance of trial and, in effect, trying cases prior to the trial itself on the theory that a witness might refuse to testify and in order to preserve testimony. In this case, one of the witnesses fears for his life, but the Commonwealth is not helpless in the face of a perceived threat to its witnesses: presumably it is able to protect its witnesses prior to trial. That is particularly so in this case, where the trial was scheduled to begin on the same day the contempt finding was made.

The order of the Superior Court is reversed.

Justice NIGRO concurs in the result.

Justice CASTILLE files a dissenting opinion which is joined by Justice NEWMAN.

CASTILLE, Justice, dissenting.

The majority holds that the contempt findings against appellants cannot stand because the hearing at which the court made the findings of contempt was improperly convened pursuant to Pa.R.Crim.P. 9015. Specifically, the majority reasons that: (1) the witnesses were not "unavailable" for purposes of Rule 9015 simply because they were unwilling to testify; and (2) there were no exceptional circumstances which compelled the preservation of appellants' testimony in the interests of justice. I respectfully dissent because I believe that the trial court properly acted within the purview of Rule 9015. The rule provides:

BY COURT ORDER.

(a) At any time after the institution of a criminal proceeding, upon motion of any party, and after notice and hearing, the court may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional cir-

cumstances, it is in the interests of justice that the witness' testimony be preserved.

(b) The court shall state on the record the grounds on which the order is based.

(c) The court's order shall specify the time and place for the taking of the testimony, the manner in which the testimony shall be recorded and preserved, and the procedures for custody of the recorded testimony.

(d) The testimony shall be taken in the presence of the court, the attorney for the Commonwealth, the defendant(s), and defense counsel, unless otherwise ordered.

(e) The preserved testimony shall not be filed of record until it is offered into evidence at trial or other judicial proceeding.

Contrary to the majority's reasoning, the trial court's decision to hold a hearing pursuant to Rule 9015 is not conditioned upon a finding of unavailability or exceptional circumstances. It is only the preservation of testimony that is subject to such limitations. Rather, the language of the rule **requires** a court to conduct a hearing upon the motion of any party prior to ordering the taking and preserving of pre-trial testimony. It is only after such a hearing that the court may exercise its discretion and determine if the preservation of the testimony is proper.[1] Here, the trial court properly held a hearing pursuant to Rule 9015 as it was **required** to do in order to determine whether to preserve appellants' testimony, either because they would be unavailable, or because preservation would be in the interests of justice.[2]

**1.** Specifically, the first sentence of the rule provides that a court may order the taking and preserving of the testimony "at any time after the institution of a criminal proceeding, upon motion of any party, and after notice **and hearing.**" Pa.R.Crim.P. 9015(a) (emphasis added).

**2.** In the order convening the hearing, the Court provided:

We will hear report on the intention of the witnesses Reighard and Hyland, the two witnesses identified by the Commonwealth's counsel, as to whether they intend to testify or refuse to testify. We will conduct hearing to determine whether or not those witnesses will testify or refuse to testify. We will receive the testimony of the witnesses Reighard and Hyland. If deemed appropriate, after hearing further argument and testimony, if need be, the testimony of the

Once the trial court ascertained that appellants would refuse to testify at trial, despite being granted immunity, the trial court properly attempted to compel appellants' testimony in order to preserve their testimony for trial pursuant to Rule 9015. The rule allows for the taking and preservation of testimony in two circumstances: (1) when the witness may be unavailable for trial; and (2) when, due to exceptional circumstances, it is in the interests of justice to preserve the witness' testimony. Here, the trial courts actions were justified under both circumstances.

First, despite the majority's conclusion to the contrary, when appellants refused to testify despite being granted immunity, they became "unavailable." [3] The majority concludes that, for purposes of the rule, a witness is "unavailable" only when it is anticipated that the witness will be unable to be physically present at the trial. In support of this narrow definition, the majority relies upon the comment to Rule 9015 which provides:

> "May be unavailable," as used in paragraph 1, is intended to include situations in which the court has reason to believe that the witness will be unable to be present *or to* testify at trial or other proceeding, such as when the witness is dying, or will be out of the jurisdiction and therefore cannot be effectively served with a subpoena, or may become incompe-

---

witnesses Reighard and Hyland will be preserved under the applicable rules of criminal procedure, including rule of criminal procedure 9015.... Trial Ct. Order, May 22, 1995.

Thus, the trial court was very clear that the purpose of the hearing was twofold: First, to determine appellants' willingness to testify, and second, if necessary, to preserve their testimony. Pursuant to Rule 9015, the trial court was correct in realizing that a hearing was first necessary to make the preliminary determination concerning the availability of the witnesses. The fact that the court opted to try to preserve appellant's testimony at the same proceeding in which it found the witnesses unavailable for trial is inconsequential, as nothing in the rule mandates that the court preserve the testimony in a separate proceeding. Thus, despite the majority's conclusion to the contrary, the trial court had the authority to conduct the May 30, 1995 hearing.

3. Reighard refused to testify because he allegedly feared for his life. Hyland refused to testify based on his Fifth Amendment and Article 1, Section 9 rights against self-incrimination, and because it was his belief that the order granting him immunity had not been properly granted.

tent to testify for any legally sufficient reason. (emphasis added).

The majority misconstrues the comment. The comment provides two situations where a witness is unavailable: When he is unable to be present **or** when he is unable to testify at trial. By giving the second part of the comment the exact same meaning as the first, the majority imputes a superfluous use of language in the comment. Nothing in the comment provides that a witness is unavailable only if he cannot be physically present at trial.

In addition, the majority has overlooked this Court's pronouncements on the meaning of witness unavailability in other contexts. This Court has not equated witness availability only with physical presence for purposes of the common law exception to hearsay for prior testimony. *See Commonwealth v. Graves*, 484 Pa. 29, 38, 398 A.2d 644, 649 (1979) (exception permits prior testimony to be admitted when a witness who is physically available and competent becomes legally unavailable due to partial or full memory loss); *Commonwealth v. Thompson*, 538 Pa. 297, 311, 648 A.2d 315, 322 (1994) (relating to witness unavailability for purposes of admitting preliminary hearing testimony at trial). In addition, for purposes of the hearsay exception relating to an unavailable declarant in the newly adopted Pennsylvania Rules of Evidence, a witness is unavailable if he:

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) *persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;* or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

Pa.R.E. 804(a) (emphasis added) (adopted May 8, 1998, effective October 1, 1998). Thus, under the rules of evidence, appellants' refusals to testify would bring them within the definition of unavailable witnesses. I see no reason to employ one definition, of unavailability for purposes of the Pennsylvania Rules of Evidence and another, more restrictive definition for purposes of the Pennsylvania Rules of Criminal Procedure. Therefore, the trial court in the instant matter properly convened the hearing and sought to preserve appellants' testimony under Rule 9015 on the ground that appellants would be unavailable for trial.

Finally, the trial court's decision to convene the hearing was proper under the provision of the rule that allows for such a hearing to effectuate the interests of justice. The trial court found that a hearing was necessary because of appellants' repeated declarations to refuse to testify despite the grants of immunity. If pre-trial testimony had not been scheduled and the court had waited until a jury in Rizzo's case was seated before ascertaining with certainty that appellants would refuse to testify, double jeopardy would most likely have attached and the case against Rizzo may have been forever lost. Thus, the trial court properly found that a hearing was necessary in order to avoid a miscarriage of justice.

Accordingly, I would hold that the trial court properly convened the hearing pursuant to Rule 9015 and that the findings of contempt against appellants should stand.

Justice NEWMAN joins this dissenting opinion.