396 A.2d 1183

**COMMONWEALTH of Pennsylvania**

v.

**Arthur G. HICKS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1978.

Decided Jan. 24, 1979.

Reargument Denied March 23, 1979.

---

Michael J. Veshecco, Erie, for appellant.

Robert H. Chase, Dist. Atty., Frank J. Scutella, Shad Connelly, Asst. Dist. Attys., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

This is an appeal[1] from a judgment of sentence of five and one-half to twenty years imprisonment entered after a non-jury trial finding appellant guilty of murder of the third degree. *See* 18 Pa.C.S.A. § 2502(c) (Supp.1978–79).

On the afternoon of August 12, 1976 appellant reported for work at his regular place of employment, the Riley Stoker plant in Erie, Pennsylvania. Appellant worked the second shift (3:30 p. m. to 12 a. m.). At 10:30 p. m., shortly before the end of the second shift, appellant and several of his fellow employees began drinking beer that had been delivered to them by the wife of one of appellant's co-workers. By midnight appellant had consumed about six, sixteen ounce bottles of beer. Just after midnight appellant and two of his drinking friends went to the nearby home of one of these friends and continued drinking until approximately 2:30 a. m., August 13, 1976. During the period of this visit appellant ate a sandwich and drank four or five twelve ounce bottles of beer. At about 3:00 a. m., appellant's host drove him home.

Shortly after appellant arrived home, he became verbally abusive towards his mother which resulted in her slapping him. At that point he became violent and chased his mother outside and around the house twice; appellant did not physically harm his mother. During the chase, appellant was screaming and growling. Having wrapped a jacket around his hand, appellant broke one of his neighbor's windows, pounded on the neighbor's air conditioner, and then ran down the street, stopping occasionally to pound or punch parked cars. Four houses down the street, appellant went to the side entrance to the home of the victim, Mr. Lampe, tore the screen door off of its hinges, broke the glass storm door, and entered the Lampe house. Once inside, appellant accosted Mr. Lampe and a struggle ensued; Mr. Lampe was

1. This Court's jurisdiction is based upon Section 202(1) of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.202(1) (Supp.1978–79), superseded by 42 Pa.C.S.A. § 722(1) (1978 Pamphlet, part I).

on top of appellant when another neighbor entered the room and helped Mr. Lampe restrain appellant. While Lampe and the neighbor restrained appellant, appellant continued to struggle, at one point biting Mr. Lampe. Moments later police arrived at the Lampe residence, in response to a call from another neighbor. Just as the police entered the Lampe house, Mr. Lampe collapsed. One officer handcuffed appellant and took him out of the room and two other officers administered cardio-pulmonary resuscitation (CPR) to Mr. Lampe, who was then unconscious. Minutes later rescue squad personnel transported Mr. Lampe, via ambulance, to a nearby hospital emergency room. Subsequent CPR proved unsuccessful, and Mr. Lampe died without regaining consciousness. It was later determined that Mr. Lampe, who was sixty-three years of age, died of acute cardiac failure due to a pre-existing arteriosclerotic heart disease which was aggravated by the severe stress of his struggle with appellant.

At 5:00 a. m. the same morning, blood and urine samples were taken from appellant; analysis showed a blood alcohol content of .207 percent. At about twelve o'clock noon on the previous day, August 12, 1976, appellant had taken one capsule of Eskatrol Spansule, an amphetamine-based diet pill prescribed by appellant's physician; the specimens submitted for laboratory analysis were of insufficient quantity to permit detection of the presence or level of this amphetamine in appellant's system. However, medical testimony indicated that appellant was still intoxicated at 5:00 a. m. on the 13th of August.

The major thrust of appellant's argument is that the record fails to establish that he was either sane or sober, so as to be criminally responsible for his conduct. In conjunction with his intoxication claim, appellant requests that we consider the constitutionality of section 308 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 308 (Supp.1978–79). We shall first address the question as to appellant's sanity at the time of the incident. Since the finder of fact[2] concluded

2. This was a bench trial.

that appellant was legally responsible for the consequences of his actions, we are called upon to determine whether, under the facts of this case, appellant should have been adjudged legally insane as a matter of law. As we stated in *Commonwealth v. Whitfield*, 475 Pa. 297, 302, 380 A.2d 362, 364 (1977), "[p]sychiatric testimony, like any other evidence, is for the trier of fact to consider and to determine what weight it should be given."

■■ The test for legal insanity in this jurisdiction is the *M'Naughten* Rule, which relieves the actor of criminal responsibility if "at the time of the committing [of] the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know he was doing what was wrong." *Commonwealth v. Woodhouse*, 401 Pa. 242, 249–50, 164 A.2d 98, 103 (1960), *quoting Regina v. M'Naghten*, 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843). *See generally Commonwealth v. Walzack*, 468 Pa. 210, 214 n.3, 360 A.2d 914, 916 n.3 (1976). Where there is evidence in a case sufficient to raise the issue of insanity, as there is in the case at bar, the burden is upon the Commonwealth to prove the accused's sanity beyond a reasonable doubt. *Commonwealth v. Delker*, 467 Pa. 305, 307, 356 A.2d 762, 763 (1976) (opinion per curiam), *citing Commonwealth v. Demmit*, 456 Pa. 475, 321 A.2d 627 (1974).

■ While the evidence strongly suggests that appellant may not have been aware of the nature and quality of his acts or that he was not aware that what he was doing was wrong, the weakness is the absence of a showing that the actor was labouring under a defect of reason *resulting from a disease of the mind*. The trial court concluded that the bizarre events that resulted in the tragic death of Mr. Lampe flowed from an acute psychotic episode, which was drug induced. This conclusion is supported by the defense medical evidence as well as the testimony of the lay witness-

es.[3]   Appellant seizes upon the fact that the *possibility* of an underlying pathological condition was not absolutely excluded by the medical testimony to urge that criminal responsibility should not attach where it is established that the actor was not aware of the nature and quality of the act and unable to distinguish between right and wrong.   In substance, appellant argues that we should ignore the *M'Naghten* requirement that the defect of reason must result from a disease of the mind.

Appellant's argument fails to perceive the true nature of the defense of insanity as it has developed in this jurisdiction.[4]   It is more than a layman's approximation of the degree of mental soundness necessary to possess the requisite mental state for the commission of the crime.   It is a societal judgment as to the minimal mental capacity that must be possessed by the actor to be held criminally responsible for his acts.   It is obvious that an actor should not be insulated from criminal liability for acts which result from a mental state that is voluntarily self-induced.[5]   The evidence in this case presents an ample basis for the finding that appellant's behavior was the result of voluntary alcohol ingestion and not mental disease.   Even accepting the remote possibility of the existence of a pathological disorder, it was at best a passive condition triggered by the ingestion of

3.  It is fundamental that we are required to review the sufficiency of the evidence in a light most favorable to the verdict winner.  *Commonwealth v. Williams*, 476 Pa. 557, 383 A.2d 503 (1978).

4.  We note that in the development of the English common law that the sanity of the actor was originally considered to be an irrelevant factor.  3 Holdsworth, *History of English Law* 371 (5th ed. 1942).  Thereafter, it was first recognized as a basis for the granting of a pardon, although the theory of guilt remained unchanged.  1 Wharton & Stille, *Medical Jurisprudence*, 6.26 (5th ed. 1905); Pollock & Maitland, *History of English Law* 480 (2d ed. 1899); 2 Stephen, *History of the Criminal Law of England* 151 (1883).

5.  We do not here reach the question of the applicability of the defense of insanity where the mental disease is traceable to the habitual long term abuse of drugs.  Here we are concerned with an acute episode.

alcohol. In either event appellant was not entitled to escape the responsibility for his conduct under the *M'Naghten* Rule. *See Commonwealth v. Walzack, supra,* 468 Pa. at 214 n.3, 360 A.2d at 916 n.3.

Appellant also argues that the finding of voluntary intoxication would prevent a conviction of murder of the third degree under our reasoning in *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). Appellant suggests that in view of the state of intoxication he did not act with the requisite malice. Appellant therefore concludes that he could only have been properly convicted of the crime of involuntary manslaughter. This analysis completely misinterprets our opinion in *Graves, supra. Graves* does not stand for the proposition that voluntary intoxication could negate *malice* and thereby reduce murder to manslaughter. To the contrary, we expressly stated in *Graves* that murder could not be reduced to voluntary manslaughter by a showing of intoxication. *Id.,* 461 Pa. at 125, 334 A.2d at 664. Just as it cannot provide the provocation for voluntary manslaughter, it is also incapable of diminishing the reckless disregard which constitutes malice so as to support a verdict of involuntary manslaughter. In *Graves* we focused upon the effect of inebriation upon the ability to form a specific intent; third degree murder does not require a specific intent. Thus appellant's reliance upon *Graves* in this instance is misplaced.[6]

Appellant also contends that the mental state was caused by a mixture of the prescribed medication with the alcohol and therefore the resultant state should be considered as being involuntarily induced since he was not warned as to the possible effect of such a combination. The weakness of this position is that it is dependent upon a

---

**6.** In view of our disposition of this question we need not consider the present vitality of our holding in *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975) or the constitutionality of section 308 of the Crimes Code, 18 Pa.C.S.A. § 308 (Supp.1978–79).

finding of fact that the alcohol consumption alone would have been insufficient to produce the condition. The finder of fact was not required on this record to find that the prescribed medication was a significant factor in producing the state of mind. There was sufficient evidence for the court to have found, as it did, that appellant's behavior resulted from the voluntary ingestion of alcohol alone. As we have repeatedly stated, it is not our function to reassess the weight to be given to the evidence. *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973).

Finally, appellant asserts that the Commonwealth failed to establish the causal link beyond a reasonable doubt. In making this argument, appellant emphasizes the fact that the victim had a pre-existing and serious heart condition. It is clear, however, that the attack by the appellant caused the stress which resulted in Mr. Lampe's cardiac failure. The defect in appellant's challenge to causation is exposed by the following principle:

> An accused may not escape criminal liability on the ground that, prior to the criminal act, his victim was not in perfect health, or the blow he inflicted was not mortal, or the immediate cause of death. If his blow started the chain of causation which led to the death, he is guilty of homicide. *Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 805 (1976).

Judgment affirmed.

O'BRIEN, J., did not participate in the decision of this case.

POMEROY, former J., did not participate in the decision of this case.

MANDERINO, J., concurs in the result.