431 A.2d 261

COMMONWEALTH of Pennsylvania, Appellee,

v.

Lamont L. SAKAL, Appellant.

Supreme Court of Pennsylvania.

Submitted March 2, 1981.

Decided July 2, 1981.

Reconsideration Denied Aug. 12, 1981.

Nicholas P. Brenlove, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Robert A. Zunich, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Justice.

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying a new trial as sought by appellant's petition, filed pursuant to the Post Conviction Hearing Act (PCHA).[1] We affirm.

Shortly after midnight on November 10, 1975 the Plum Borough Police Department radio dispatcher received a telephone call wherein the caller stated, "this is Sakal at 5056 Hialeah. I have just killed my wife." Police patrol cars were dispatched to the address. As the patrol cars arrived, a man subsequently identified as appellant, ran to the cars and yelled, "I killed my wife." The officers discovered the body of the deceased wife inside the home and then arrested appellant. Appellant made no more statements until a few hours later.

On November 12 and 14, 1975, appellant was examined by two psychiatrists at the Allegheny County Behavior Clinic,

1. Act of January 25, 1966, P.L. (1965) 1580, *as amended*, 19 P.S. § 1180–1 et seq., repealed by Section 2(a) [1397] of the Act of April 28, 1978, P.L. 202, repeal effective June 27, 1980, as amended by Section 1 of the Act of June 26, 1980, P.L. 265, No. 77, which delayed repeal until June 27, 1981.

Dr. Bowman and Dr. Davis. The latter doctor ultimately testified for the defense at trial, advancing his opinion that appellant was insane under the *M'Naghten* test, *i. e.*, at the time of the act he either did not know the nature and quality of the act or did not know that it was wrong. *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979). On November 25, 1975 appellant was adjudged incompetent to stand trial and was committed to Farview State Hospital. Seven months later appellant was deemed mentally fit for trial, which took place in August 1976 before a jury. The jury returned a verdict of guilty of murder of the first degree.

Post-verdict motions were filed, argued, and denied. Appellant was sentenced to life imprisonment. This Court heard a direct appeal and affirmed the judgment of sentence. *Commonwealth v. Sakal*, 480 Pa. 620, 391 A.2d 1058 (1978). By new counsel appellant filed his PCHA petition. After a hearing on the matter, the court of common pleas entered an order denying the prayer for relief.

■ Appellant here submits that he was denied the effective assistance of counsel, *see* Section 3(c)(6) of the PCHA, 19 P.S. § 1180–3(c)(6), in that his trial counsel (1) failed to move for the suppression of an inculpatory statement which was introduced at trial and (2) inadequately prepared and presented appellant's insanity defense.

The standard for evaluating the effectiveness of counsel is set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967):

We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. (Emphasis in original, footnote omitted.)

Appellant's initial claim is that his trial counsel was ineffective for failing to move for the suppression of an inculpatory statement he gave to an arresting officer.[2] At the PCHA hearing, the trial counsel testified that he was aware of one psychiatric opinion that appellant was insane at the time of the act. Because the voluntariness of a statement depends upon the totality of the circumstances, including an accused's psychological state, a motion to suppress appellant's statement might have been meritorious. However, the trial counsel's plan to focus the trial on the issue of appellant's mental state, the nature of his questions to the detectives on cross-examination, and the range of alternative interpretations of the statements convince us that the trial counsel pursued a reasonable trial strategy.

Appellant's second allegation of ineffective assistance of counsel focuses upon the preparation and presentation of the insanity defense at trial. We do not adopt the Commonwealth's position that this claim has not been preserved for review. We agree that issues, though raised in a PCHA petition, which are not pursued at the time of the hearing are waived. *Commonwealth v. Bowen*, 455 Pa. 152, 314 A.2d 24 (1974). In the instant case, however, appellant's PCHA counsel asked questions that related to each of this argument's components, as set out in the PCHA petition, and thereby preserved the issue for review.

**2.** We note some confusion as to which statement appellant considers the basis of this argument. In his PCHA petition appellant referred to oral statements he made to arresting officers. At the PCHA hearing his counsel stated that the lack-of-suppression-motion argument was specifically directed to the November 11th statement given to Detective Jennings rather than to the November 14th statement given to Detective Zener, but contradicted himself moments later. Appellant's brief to this Court refers only to an "inculpatory statement." The substance of the November 11th statement given to Detective Jennings was that on the night of November 10th appellant and his wife had an argument; that he strangled her with his hands, with a beach towel, and finally with a dog chain; that he loved his wife and felt he had been choking her with his love; and that God would do what He thought was right. Both the statement to Detective Jennings and the November 14th statement to Detective Zener recounted how he had choked his wife previously on November 5th but had stopped when he came to his senses and realized what he was doing.

Nonetheless, we cannot find merit in the claim. After a careful review of the transcript of the trial and the transcript of the PCHA hearing, we conclude

(a) That the expert medical testimony of Dr. Davis was not prejudicial to appellant. Dr. Davis was thoroughly familiar with appellant's case, and the trial counsel had been advised by other psychiatrists that reconstructing in 1976 appellant's frame of mind at the time of the act was theoretical at best.

(b) That the trial counsel did not fail to inform appellant about aspects of Dr. Davis' testimony. We are not convinced that it was "detrimental." Furthermore, appellant told his trial counsel he wanted Dr. Davis to testify.

(c) That the entry into evidence of portions of a psychiatric report was a necessary consequence of having Dr. Davis testify.

(d) That the trial counsel's pretrial investigation of lay witnesses and research of the law were adequate and necessitated no continuance of trial.

Affirmed.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.